UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BMG MUSIC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 04-CV-650 |
| | ) | |
| DOES 1-203, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF
PUBLIC CITIZEN, AMERICAN CIVIL LIBERTIES UNION,
ELECTRONIC FRONTIER FOUNDATION, AND
AND ACLU OF PENNSYLVANIA
IN RESPONSE TO MOTION FOR EXPEDITED DISCOVERY**

**TABLE OF CONTENTS**

STATEMENT .................................................................................................................. 1

ARGUMENT .................................................................................................................. 3

1. Balancing the Right to Anonymous Speech Against the Need for Disclosure ........................ 4

2. Personal Jurisdiction .................................................................................................... 10

3. Joinder ............................................................................................................................. 12

4. Procedure for Subpoenas ............................................................................................... 16

Conclusion ........................................................................................................................ 16

This is an action for copyright infringement in which 18 music companies seek injunctive relief, damages and fees and costs against 203 anonymous and completely unrelated individuals. Plaintiffs allege that defendants have displayed certain data files on their personal computers, containing copyrighted musical performances, to the general public over the Internet, in a manner that enables the public to download those files to their own computers.   Amici file this brief to argue that, notwithstanding the serious violations of law alleged in the complaint, plaintiffs have not made a sufficient factual showing to warrant discovery into the identities of persons who have communicated anonymously over the Internet, including a showing that there is personal jurisdiction over each of the 203 defendants.   Moreover, there are serious concerns about whether all 203 defendants are properly joined in one action, particularly in light of the fact that, in justifying discovery, plaintiffs have made a factual showing with respect to three defendants but present no evidence to support identification of the other 200 individuals. Finally, we argue that, in the event some discovery is to be allowed, certain additional conditions should be imposed.

**STATEMENT**

Exhibit A to the Complaint specifies the Internet Protocol (AIP@) address that each Doe allegedly used for posting songs on particular dates (ranging from November through December 2003), identifying between five and ten songs for each defendant. Plaintiffs seek to impose liability on each of the 203 individuals individually B there are no allegations of joint or several liability and no claims for relief in the alternative against any of them.   There is also no claim that the infringers acted pursuant to any common plan or conspiracy, or that their liability arises out of a common transaction or occurrence.   At most, it is alleged that there have been a series of

1

instances in which each individual defendant has used the facilities of a single Internet Service Provider (AISP@, Comcast, to display their respective data files on the Internet.  There is no allegation that Comcast itself is liable for the infringements.  Plaintiffs allege generally that all defendants can be found in Pennsylvania, but their allegation of personal jurisdiction is based on the facts that the Does= Internet postings can be downloaded in every jurisdiction in the United States, including Pennsylvania, and that their ISP, Comcast, can be found in the state as well.

Plaintiffs now seek to identify the anonymous defendants so that they can be served with summonses. In support of this motion, plaintiffs submit an affidavit from Jonathan Whitehead, Vice-President of the Recording Industry Association of America (ARIAA@, a trade association to which the plaintiffs belong, that explains to the Court the serious economic problem posed for plaintiffs by the extensive use of the Internet to enable music piracy, while accusing the ISP=s, who are not named as defendants, of deliberately profiting from the use of their facilities for piracy.  The affidavit further explains the manner in which the RIAA investigates file-sharing systems, and how, as a general matter, its staff members attempt to verify that particular anonymous individuals have made copyrighted songs available for download, by observing the author and title listed for each file and listening to Aa sample@of the files.  The affidavit asserts that Complaint Exhibit A is a listing of songs identified by the RIAA as being offered for download; although the affidavit is made on personal knowledge, there is no statement that the affiant himself listened to each song listed or verified the existence of copyright registrations for the songs.  A complete listing of songs offered for download by three of the 203 defendants has been filed with the Court.

Plaintiffs argue that the identification of Doe defendants is commonly permitted, and that unless the defendants are identified, plaintiffs will be unable to move forward with their suit. Plaintiffs also place substantial weight on the harm that music piracy is causing to their industry, and stress their need for immediate relief, with particular reference to the danger that ISP=s may discard their Alogs@ showing which users were given access through which IP addresses within weeks or even days.

## ARGUMENT

The Complaint alleges serious violations of the law with potentially serious consequences for plaintiffs= economic welfare.  Moreover, in recently completed litigation, where the D.C. Circuit held that the subpoena procedure of the Digital Millenium Copyright Act (ADMCA@) did not apply to the identification of subscribers who merely used an ISP=s facilities to gain access to the Internet, *see RIAA v. Verizon Internet Services*, 351 F.3d 1229 (D.C. Cir. 2003), all amici here filed briefs urging that First Amendment principles be applied to protect the right of anonymity.  That plaintiffs here are now invoking Rule 45 and attempting to satisfy its standards represents an enormous step forward for which they deserve credit.

However, as in the DMCA case, this Atest case@ will set standards for the application of Rule 45 for subpoenas to identify alleged copyright infringers, and it is important that Due Process and the First Amendment be scrupulously protected.  Reluctantly, amici have concluded that there is serious reason to question whether plaintiffs= documentation for their discovery request meets those standards.   Accordingly, we file this brief to describe to the Court the procedures that we believe should be followed, and the ways in which plaintiffs=showings to date fall short.

1.  **Balancing the Right to Anonymous Speech Against the Need for Disclosure.**

Plaintiffs are correct that it is commonplace for plaintiffs to be allowed discovery at the outset of a lawsuit to identify otherwise unknown persons alleged to have committed a legal wrong.  But there is a significant difference between this case and the various cases plaintiffs cite on page 5 of their brief, where prisoners or arrestees sought to identify the prison or police officers who allegedly beat or otherwise mistreated them.  The defendants here are accused of having engaged in wrongful but anonymous speech on the Internet, and because the First Amendment protects the right to speak anonymously, a subpoena for their names and addresses is subject to a qualified privilege.  Just as in other cases where discovery seeks information that may be privileged, the Court must consider the privilege before authorizing discovery.

The tension between this important qualified privilege and the interest of a plaintiff who has alleged wrongdoing in obtaining information needed to pursue litigation over alleged wrongdoing, has been considered by a number of federal and state courts over the past several years.  These courts have wrestled with the fact that, at the outset of the litigation, the plaintiff has done no more than allege wrongdoing, and a privilege is generally not considered to be overcome by mere allegations.  They have further recognized that a serious chilling effect on anonymous speech would result if Internet speakers knew they could be identified by persons who merely allege wrongdoing, without necessarily having any intention of carrying through with actual litigation.  Indeed, plaintiffs=representatives have repeatedly told the press that they do not necessarily want to pursue litigation against all anonymous file sharers whose identities they obtain.[1]  Moreover, the anonymous publication of musical works, like other forms of

_____

[1]Before the DC Circuit ruled that the DMCA subpoena procedure was unavailable, the RIAA had subpoenaed about 2500 filesharers, http://www.eff.org/IP/P2P/riaasubpoenas/, but only brought

4

performance, is speech protected by the First Amendment.   *In re Verizon Internet Svces*, 257 F. Supp.2d 244, 260 (D.D.C. 2003), *rev=d on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003).[2]

In order to balance these interests, the courts have drawn by analogy from the balancing test that many courts have adopted in deciding whether to compel the disclosure of anonymous sources or donors.  *Carey v. Hume,* 492 F.2d 631 (D.C. Cir. 1974); *Cervantes v. Time,* 464 F.2d 986 (8th Cir. 1972); *Baker v. F&F Investment*, 470 F.2d 778, 783 (2d Cir. 1972).  *See also UAW v. National Right to Work*, 590 F.2d 1139, 1152 (D.C. Cir. 1978); *Black Panther Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981).   Accordingly, the courts that have considered this question have adopted a several-part balancing test to decide whether to compel the identification of an anonymous Internet speaker so that he may be served with process.

---

suit  against  or  reached  private  settlements  with  approximately  600  persons. http://www.washingtonpost.com/wp-dyn/articles/A35281-2004Jan21.html?nav=hptop_ts.

[2]Judge Bates of the District Court of the District of Columbia opined that First Amendment protection for file sharing defendants was minimal because they are charged with copyright infringement and because they are not engaged in core political speech.  The first reason begs the question.  The First Amendment does not protect libel or revelation of trade secrets or any of the variety of other wrongs that are commonly alleged in the lawsuits for which the courts have developed John Doe proceedings, any more than it protects copyright infringement.  However, at the initial stage of the lawsuit, no court has determined that anyone has committed any such wrongs. The very point of the multi-part balancing test is to give the anonymous speaker an opportunity to contest the bona fides and merits of allegations of wrongdoing before the right of anonymity is permanently breached.  The second reason is simply wrong B the Supreme Court=s decisions on anonymous speech emphasize the right of writers and other artists to publish creative works under pseudonyms.  Moreover, if the defendants were simply individuals who displayed a carefully selected handful of files containing portions of songs B and the evidence goes no further than that as to most of the defendants B any fair use defense that they might mount could have First Amendment underpinnings inasmuch as the Supreme Court has held that A fair use@ itself embodies First Amendment values.  *Eldred v. Ashcroft*, 123 S.Ct. 769, 789-790 (2003); *Harper & Row Pub. v. Nation Enterprises*, 471 U.S. 539, 560 (1985).

This test was most fully articulated in *Dendrite v. Doe*, 775 A2d 756 (N.J.App. 2001), which remains the only appellate opinion in the country to face the question squarely. *Dendrite* requires the would-be plaintiff to (1) use the Internet to notify the accused of the pendency of the identification proceeding and to explain how to present a defense; (2) quote verbatim the statements allegedly actionable; (3) allege all elements of the cause of action; (4) present evidence supporting the claim of violation, and; (5) show the court that, on balance and in the particulars of the case, the right to identify the speaker outweighs the First Amendment right of anonymity.

So long as the quantum of evidence demanded of the plaintiff to meet this test does not exceed information that a plaintiff can reasonably obtain before undertaking discovery, this test fairly balances the interest in pursuing wrongdoing against the First Amendment right to speak anonymously. And, the final Abalancing@ part of the test enables courts to give extra protection to the speaker where, for example, the danger of retaliation is greater, or the speech at issue is core political speech about public officials, or to give extra weight to the plaintiff where the Court deems the speech at issue to be of only marginal value.

Several other courts have similarly set forth requirements of notice, review of the complaint, and presentation of argument and evidence before an ISP will be compelled to identify an Internet speaker. For example, in *Melvin v. Doe*, 49 Pa.D.&C.4th 449 (2000), *appeal quashed*, 789 A.2d 696, 2001 Pa.Super. 330 (2001), *appeal reinstated*, 836 A.2d 42 (Pa. 2003), the trial court allowed an anonymous defendant to present evidence and seek summary judgment, ordering disclosure only after finding genuine issues of material fact requiring trial. In reversing the denial of the defendant=s interlocutory appeal, the Pennsylvania Supreme Court

6

discussed at length the conflict between the right to speak anonymously and the plaintiff=s right to identify a potential defendant, and it remanded for consideration of whether evidence of actual damage had to be presented before the right of anonymous speech could be disregarded.  836 A.2d at 47-50.

Similarly, in *La Societe Metro Cash & Carry France v. Time Warner Cable,* 2003 WL 22962857 (Conn. Super.), the court applied a balancing test and considered evidence that allegedly defamatory statements were false and caused injury before deciding to allow discovery concerning the identity of the speaker.   In *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D.Cal. 1999), the court required the plaintiff to make a good faith effort to communicate with the anonymous defendants and provide them with notice that the suit had been filed against them, thus assuring them an opportunity to defend their anonymity, and also compelled the plaintiff to demonstrate that it had viable claims against such defendants.  *Id*. at 579.   And in *In Re Subpoena to America Online,* 52 Va.Cir. 26, 34 (Fairfax 2000), *rev=d on other grounds*, 542 SE2d 377 (Va. 2001), the court required introduction of the allegedly actionable Internet posting and that the court be Asatisfied by the pleadings or evidence supplied@ that the subpoenaing party had a legitimate basis to contend that it was the victim of actionable conduct, Aand . . . the subpoenaed identity information [must be] centrally needed to advance that claim.[3]

In opposition to this argument in a similar case pending in the District of Columbia, *UMG Recordings v. Doe*, plaintiffs have argued that the courts "have repeatedly rejected claims that First Amendment interests require a heightened level of scrutiny prior to issuance of a

---

[3]The argument for a balancing test is more fully developed at http://www.citizen.org/documents/Melvin%202.pdf.

subpoena or other judicial process." Pl. Mem. at 8. However, most of the cases plaintiffs cite are irrelevant because they consider only whether a particular demand for personal information violates a generalized right of privacy under the Fourth Amendment, not the First Amendment. *Smith v. Maryland*, 442 U.S. 735 (1979); *Guest v. Leis*, 255 F.3d 325 (6th Cir. 2001); *United States v. Hambrick*, 55 F.Supp.2d 504 (D.W.Va. 1999), *aff'd mem*, 225 F.3d 656 (4th Cir. 2000). *See also AFGE v. HUD*, 351 F.3d 1229 (D.C. Cir. 1997) (cited by Pl. Mem. at 7). And two Supreme Court cases that plaintiffs cite involve First Amendment issues not present here – in *University of Pennslyvania v. EEOC*, 493 U.S. 182 (1990), the issue was whether to extend the right of academic freedom to recognize a privilege against disclosure of peer review materials, and in *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186 (1946), the Supreme Court refused to hold that the First Amendment bars the application of the Fair Labor Standards Act to news companies.[4]

Nor does the fact that the Doe defendants have disclosed their identities to their ISP's constitute a "waiver" of their qualified First Amendment right to communicate anonymously. If that were true, then *NAACP v. Alabama*, 357 U.S. 449 (1958), and *Bates v. City of Little Rock*, 361 U.S. 516 (1960), were both wrongly decided. In those cases, the Supreme Court overturned penalties imposed on the NAACP and its officers for refusing to comply with orders to identify

---

[4] The only support plaintiffs cite in *UMG Recordings* that is even close to being on point is a footnote in *Reporters Comm. for Freedom of the Press v. American Tel. & Tel. Co.*, 593 F.2d 1030, 1050 n.67 (D.C. Cir. 1978), where the court refused to enjoin the telephone company from **voluntarily** complying with Justice Department requests for toll records of reporters' telephone calls with sources. Even assuming that this decision has any bearing on whether a court might **compel** the identification of sources, it is well established that the First Amendment limits the compulsory disclosure, pursuant to subpoena and otherwise, of names and indeed of other kinds of information. *Black Panther Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981). *See also AFL-CIO v. FEC*, 333 F.3d 168 (D.C. Cir. 2003); *Wyoming v. Department of Agriculture*, 208 F.R.D. 449, 454-455 (D.D.C. 2002).

members, whose names the NAACP of course knew, on the ground that compelled identification violated the members' right to remain anonymous. Similarly, *McIntyre v. Ohio Elections Comm.*, 514 U.S. 334 (1995), and *Talley v. California*, 362 U.S. 60 (1960), were wrongly decided, because the authors of the unsigned leaflets identified themselves to their printers, and the distributors revealed their faces to the persons to whom they handed the leaflets. Indeed, if plaintiffs correctly state the law, there could be no anonymous Internet communication, because every Internet user is identified to his or her ISP. Hence, every ex parte request to identify every Internet speaker would have to be granted.

Indeed, speech is rarely literally anonymous to all persons at all times; if such nondisclosure were the precondition for application of the First Amendment, there would be no right to speak anonymously as a practical matter. But that is not the law. Decisions such as *Dendrite* and *Seescandy* require an evidentiary showing before plaintiffs may serve discovery seeking to identify Doe defendants sued for online communications, and this Court should follow their analysis.

In this case, where the plaintiffs are respectable companies and their counsel are highly respected lawyers, it is difficult even to consider the possibility that the filing of the Complaint might not have been preceded by a meticulous investigation. On the other hand, it is not difficult for the plaintiffs to present solid evidence, including an affidavit by the individual who examined the files available for download from each defendant's computer, listened to the files, verified that they were copyrighted songs, and checked to be sure that those copyrights were registered and are owned by the plaintiffs, a jurisdictional prerequisite pursuant to 17 U.S.C. § 411, *MGB Homes v. Ameron Homes*, 903 F.2d 1486, 1488 (11th Cir. 1990), and to list in the affidavit or in

an affidavit attachment the songs that the Doe made available for download.  The Whitehead affidavit in this case is long on social policy and very short on first-person averments about the individual defendants in this case.  Because this case will set a standard for all plaintiffs who seek to identify anonymous internet speakers based on claims of copyright infringement, including those who are less scrupulous and ethical than these plaintiffs, the Court should not authorize a subpoena until such individualized evidence is presented about each Doe.

2.  **Personal Jurisdiction.**  One of the showings that plaintiffs have failed to make is that the Court has personal jurisdiction over each of the 252 defendants.  The federal courts have generally applied a sliding scale analysis to determine personal jurisdiction over a defendant who has posted information on the Internet that other persons can examine and download to computers located throughout the world, to ensure that persons using the Internet are not automatically subject to suit worldwide.  Under the sliding scale or AZippo@ analysis,  named after *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997), defendants who passively post information on the Internet for others to examine and copy are not subject to personal jurisdiction based on their Internet postings, while defendants whose Internet sites are commercially Ainteractive,@ in the sense that they use their sites to engage in business transactions, are subject to being sued in any state in which a substantial number of business transactions occur.  Along this continuum, the greater the degree of commercial interactivity, the greater the liability for suit in a foreign jurisdiction.  *E.g.*, *ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002); *Neogen Corp. v. Neo Gen Screening*, 282 F.3d 883 (6th Cir. 2002);  *Mink v. AAAA Development*, 190 F3d 333 (5th Cir. 1999).   The Third Circuit has adopted the analysis, recognizing that *Zippo* "has become a seminal authority regarding personal

10

jurisdiction based upon the operation of a web site." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (2003) (personal jurisdiction based on a web site only exists if the web site's "interactivity reflected specifically intended interaction with residents of the forum state.").

The defendants in this case do not have websites, but their computers are alleged to be functioning in a manner comparable to a website B they have opened a section of their personal computers to the Internet in a manner that permits other persons with personal computers to obtain files stored on those computers and download them. There is no contention that the Amusic pirates@ are charging for the information that is being made available. Therefore, defendants cannot be found at the Acommercially interactive@ end of the sliding scale, and the mere fact that the data on their computers can be accessed by others and downloaded in Eastern District of Pennsylvania is not a sufficient basis for subjecting them to suit here.

Moreover, although the Complaint alleges and the Whitehead Affidavit avers that the IP numbers that each of the defendants is alleged to have used to post infringing material can be traced to an ISP, Comcast, which Acan be found@ in Pennsylvania, the attached affidavit of Seth Schoen reveals a very different picture. Comcast is not a small, local ISP whose customers are all clustered in Pennsylvania; it is a national company that offers Internet service throughout the region and the nation. Mr. Schoen demonstrates that, by employing a more meticulous analysis than the one described by Mr.Whitehead, the various IP numbers set forth in Complaint Exhibit A can be attributed to locations quite remote from Pennsylvania. It is very likely that customers who connect to the Internet through those remote locations reside in those areas, and, more to the point, not in Pennsylvania. As this affidavit shows, the technique and databases she used to obtain this information were readily accessible to plaintiffs before they filed this action. Indeed,

at page 7 n4 of their Motion for Leave to Take Immediate Discovery, plaintiffs implicitly acknowledge that the Court lacks personal jurisdiction over many defendants.

Accordingly, on the face of the complaint, it appears that the great majority of the defendants are not Pennsylvania residents.  Of course, Comcast has address information for each of its customers, but there is no basis for this Court to compel Comcast to identify defendants over whom the Court does not have personal jurisdiction.  Moreover, it would be a very substantial hardship for individual defendants residing as far away as Seattle or Honolulu, who wish to protect their right to communicate anonymously on the Internet, to hire counsel to defend their rights in Pennsylvania.  Accordingly, if any subpoenas are to be issued to Comcast, they should only require Comcast to specify the states in which each defendant resides, so that plaintiffs can refile this action against such individuals in the proper jurisdictions.

**3.  Joinder**.  There is also substantial reason to question whether plaintiffs have properly joined all 203 defendants in a single action.  Rule 20 reads in pertinent part as follows:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally or in the alternative, any right of relief in respect of arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Under this Rule, multiple defendants may be joined in a single lawsuit when three conditions are met: (1) the right to relief must be "asserted against them  jointly, severally or in the alternative"; (2) the claim must "aris[e] out of the same transaction.  occurrence, or series of transactions or occurrences"; **and** (3) there must be a common question of fact or law common to all the defendants.  In this case, there is no claim for relief jointly or severally or in the alternative.  Moreover, there is no common transaction or occurrence, and we question whether

12

there is the proper "series of transactions or occurrences."   The individuals sued have no

connection with each other: They are claimed to have shared different music using different

filesharing software at different places throughout the country.[5]

The cases require that, for defendants to be joined in the same lawsuit, they must be

related **to each other**.   Thus, for example, this Court recently refused to allow plaintiffs who

were overcharged for notary services by different defendants in different transactions to proceed

as a single lawsuit.   *Becker v. Chicago Title Ins. Co.*, 2004 WL 228672 (E.D.Pa.).   Similarly,

multiple defendants accused of infringing plaintiff's copyrights were held to have been

improperly joined when the alleged infringements were used for different purposes on different

occasions.   *Rappoport v. Spielberg, Inc.*, 16 F.Supp.2d 481 (D.N.J. 1998).   By contrast, when a

party has acted according to a unifying scheme, joinder can be proper.   *King v. Pepsi Cola

Metro. Bottling Co.*, 86 F.R.D. 4 (E.D.Pa. 1979) ("the allegations of a pervasive policy of

discrimination by Pepsi would bring the complaints of the individual plaintiffs under the rubric

of the 'same series of transactions'.").[6]

---

[5]In  *Pergo v. Alloc*, 262 F. Supp.2d 122, 127 (S.D.N.Y. 2003), the court characterized prongs
(1) and (2) as requirements in the alternative, deeming prong (1) to include only "joint and several"
liability, and the language "or in the alternative" to begin prong (2).   Although other cases have
described the rule that way as well, that is not the natural reading of the language.   Prongs (1) and
(2) both modify the term "request for relief" and are not stated in the alternative.   Under the *Pergo*
reading, prong (1) consists of the words "jointly, severally," with no conjunction between the
adverbs, which would not be grammatically correct.   The words "or in the alternative" are plainly
part of the same series as "jointly, severally," and that series is either an adverbial clause modifying
the verb "asserted" or an adjectival clause modifying the phrase "request for relief,"just as prong (2)
(beginning with the words "in respect of") modifies that same phrase.   Accordingly, the literal
meaning of the language would require the request for relief to satisfy both criteria, just as the phrase
"tall mountain covered with glaciers" would not properly describe Mount Fuji, because although it
is tall it has no glaciers.

[6] *Accord Pergo, Inc. v. Alloc, Inc.*, 262 F.Supp.2d 122 (S.D.N.Y. 2003) (denying joinder
when only connection between defendants is that they may have infringed the same patent);
*Tele-Media Co. of Western CT v. Antidormi*, 179 F.R.D. 75 (D.Conn. 1998) (denying joinder of 100

Moreover, the allegation that the defendants all used the internet to make copyrighted music available does not make their joinder any more appropriate.  Unlike *In re Vitamins Antitrust Litig.*, 2000 WL 1475705, *18 (D.D.C.), in which each of the defendants was alleged to be engaged in a single global antitrust conspiracy that was alleged in the complaint to be unlawful, there is nothing inherently unlawful about using software to make files available through the Internet.  It is the provision of hundreds or thousands of copyrighted performances that is the wrongdoing alleged in this case, and the fact that each of the Doe defendants is alleged to have committed the same wrong against some or all of the same plaintiffs via the same medium does not make it appropriate to join them all in the same case, any more than every employer in Philadelphia who used the mail or the telephone to deny hundreds of employment applications could be joined in the same Title VII proceeding, simply because they used the same method to communicate allegedly discriminatory decisions.  *Ross v. Meagan*, 638 F.2d 646, 650 (3rd Cir. 1981) (although plaintiffs "claim relief for similar but entirely distinct and separate transactions or series of transactions. . . . A coincidental similarity in the underlying facts will not permit appellants to proceed jointly.").  *Cf. Nassau Cy. Ass'n of Ins. Agents v. Aetna Life & Cas. Co.*, 497 F.2d 1151 (2d Cir. 1974) (refusing to allow 164 insurance companies to be joined in a single action just because they allegedly cheated hundreds of agents in the same way).

---

defendants who each used similar technology to infringe plaintiff's pay-per-view programming because defendants did not act in concert); *Movie Systems v. Abel*, 99 F.R.D. 129 (D. Minn. 1983) (denying joinder of 1,798 defendants who had allegedly all infringed the same television distributor's broadcasts because, "although there were common practices and perhaps common questions of law," the independent defendants had not acted jointly).

Our concern that corners might be cut if hundreds of otherwise unrelated defendants are joined in a single action is heightened by the manner in which plaintiffs have sought leave to pursue discovery in this case.  Plaintiffs=affidavit attaches hundreds of pages concerning the music files made available by three of the 203 defendants and tells the Court that although comparable evidence could be made available with respect to each of the other defendants, it would be too burdensome to do so.  However, although the courts exist to implement broad and important public policies, they do so by meting out individual justice.  To be sure, it is more convenient to present evidence about only a few of the accused before obtaining discovery about all of them, but if it is important enough to sue all of them, it should be important enough to present sufficient evidence to justify discovery identifying each one of them.[7]

In a highly analogous context, several district courts have refused to allow a company that distributed television programs through satellite systems to sue hundreds of otherwise unrelated individuals for using Apirate access boxes@to obtain satellite signals without paying for them.[8]  Stealing satellite signals is at least as reprehensible as making music files available for download, but these district judges refused to be stampeded by claims of convenience and need for immediate action into allowing all defendants to be joined in one action for the administration of mass justice.  The same principle applies to the accused copyright infringers in this case.

_____

[7]We might well question the need for purposes of obtaining discovery to present hundreds of pages of exhibits about each defendant to justify discovery into the identify of each one.  No doubt it makes a more compelling press release, however.

[8]The cases are collected at the web page http://www.directvdefense.org/files/ (*see* caption ASeverance@).

**4. Procedure for Subpoenas**.  Even assuming that the Court concludes that it should allow some or all of the discovery requested by plaintiffs, we have a modest suggestion about the terms of that discovery to better ensure that the Does have a realistic opportunity to object if they choose to do so.  We applaud plaintiffs for recognizing that Comcast should be allowed sufficient time to respond to the subpoenas to allow Comcast to notify its subscribers that their identifies are at issue, so that, if they choose, the Does can offer evidence or argument in defense of their anonymity under the *Dendrite* standard. Pl. Mem. at 7 n4.  We question, however, whether fifteen days from the date of the subpoena is sufficient time to allow each defendant to receive the requisite notice from Comcast, and to allow that defendant, particularly a defendant who may be located thousands of miles from Pennsylvania, to obtain an attorney licensed to practice in this state, and to allow that attorney to prepare a motion to quash if one can be justified.   Amici suggest that the Court address this issue in its order, by directing Comcast to provide notice within seven days of its receipt of the subpoena to each person whom its records reflect as having used the indicated IP addresses at the indicated times, to allow the defendants fourteen days from the time notice was received to file a motion to quash, and to refrain from disclosure pending the disposition of any motion to quash.

## CONCLUSION

The motion for expedited discovery should be considered and resolved in accordance with the principles set forth above.

Respectfully submitted,

Paul Alan Levy
Charlotte Garden

16

Public Citizen Litigation Group
1600 - 20th Street, N.W.
Washington, D.C. 20009
(202) 588-1000
(202) 599-7795 (fax)

Attorneys for Public Citizen

Cindy A. Cohn
Wendy Seltzer

454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile:  (415) 436-9993

Attorneys for Electronic Frontier Foundation

Christopher A. Hansen
Aden J. Fine

18th Floor
125 Broad Street
New York, New York 100004
(212) 549-2500

Attorneys for American Civil Liberties Union

_____
Malia N. Brink, Associate Counsel of Record
PA bar # 86749
Signature Verification Code:  MB893

P.O. Box 1161
Philadelphia, PA 19105
(215) 592-1513 ext. 119
(215) 592-1343 (fax)

Attorney for ACLU of Pennsylvania

February 23, 2004