IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BMG MUSIC, *et al.*,                     :  CIVIL ACTION
                                         :
                    Plaintiffs,          :
                                         :
             v.                          :
                                         :
DOES 1-203,                              :
                                         :
                    Defendants.          :  NO. 04-CV-650

O R D E R

AND NOW, this          day of March, 2004, upon consideration of the Motion of

Public Citizen, et al. for Leave to File Memorandum as Amici Curiae Addressing Motion for

Expedited Discovery and Plaintiffs' Opposition thereto, and the briefs and arguments thereon, it

is hereby

ORDERED that said Motion is DENIED.

_____
CLARENCE J. NEWCOMER
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BMG MUSIC, *et al.*, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DOES 1-203, | : | |
| | : | |
| Defendants. | : | NO. 04-CV-650 |

**PLAINTIFFS' OPPOSITION TO MOTION OF PUBLIC CITIZEN, ET AL.,
FOR LEAVE TO FILE MEMORANDUM AS AMICI CURIAE
ADDRESSING MOTION FOR EXPEDITED DISCOVERY**

Plaintiffs respectfully file this memorandum in response to the motion of Public Citizen,

American Civil Liberties Union, Electronic Frontier Foundation, and ACLU of Pennsylvania

(hereinafter "*amici*")[1] for leave to file a memorandum as *amici curiae* addressing Plaintiffs'

motion for expedited discovery.

The motion of *amici* should be denied.  *Amici*'s attempt to raise issues in advance of

notice to the Defendants violates a cardinal rule:  *amici* cannot inject issues "not advanced . . . by

the party on whose behalf the argument is being raised."  *See McCleskey v. Zant*, 499 U.S. 467,

523 n.10 (1991).  No Defendant has raised the arguments *amici* set forth in their brief.  If a

Defendant does raise such issues, they can be fully litigated in a concrete setting at the

appropriate time.  At this time, *amici*'s effort to inject themselves into this case is premature.

Indeed, in two parallel cases, federal courts in New York have rejected efforts by these

same *amici* to litigate issues in advance of notice to the Defendants and prior to issuance of a

subpoena to the Internet Service Provider ("ISP").  *See Order, Sony Music Entm't, Inc. v. John*

---

[1] Plaintiffs shall refer to the public interest groups as "*amici*" for ease of reference, recognizing
that Plaintiffs believe it is premature to grant such status to any group in this litigation.

*Does 1-40* (S.D.N.Y. Feb. 3, 2004) (Chin, J.) (attached as Exhibit A); Order, *Warner Bros. v. John Does 1-43* (S.D.N.Y. Feb. 10, 2004) (Sprizzo, J.) (ruling from the bench).  In those courts, as well as two other cases that parallel this one,[2] judges have granted Plaintiffs' motion for expedited discovery and deferred litigation of all of the issues raised by *amici* until after Defendants have been notified and/or identified.  This Court should follow that course.

As set forth in Part II of this brief, all the issues raised by *amici* can be resolved in the ordinary course of this litigation – if any Defendant wants to raise them – in a way that balances Plaintiffs' need to vindicate their rights under federal law and to stop the ongoing irreparable harm caused by Defendants' copyright infringement with Defendants' interest in having a full and fair opportunity to litigate relevant issues at the appropriate time.  The first step in that process, however, is issuance of a subpoena to Comcast Cable Communications, LLC ("Comcast") (the ISP serving all of the Defendants), which cannot occur until the Court grants Plaintiffs' motion for expedited discovery.  Plaintiffs therefore request that the Court grant that motion as quickly as possible and deny *amici*'s motion.

## BACKGROUND

Plaintiffs are major recording companies who own copyrights in sound recordings.  The as-yet unnamed Defendants in this case are individuals who have disseminated (and likely are continuing to disseminate) Plaintiffs' copyrighted works unlawfully over a peer-to-peer ("P2P") network.  *Amici* do not dispute that Plaintiffs are entitled to bring suit against such individuals.  Indeed, there is no credible argument to the contrary.  Uploading and downloading copyrighted works over a P2P network clearly violates federal law.  *See A&M Records, Inc. v. Napster, Inc.,*

---

[2] In two parallel cases, *Arista Records, Inc. v. John Does 1-250* (S.D.N.Y. Jan. 26, 2004) (Kaplan, J.) and *Elektra Entertainment Group, Inc. v. Does 1-7*, No. 3:04-CV-00607 (D.N.J. Feb. 17, 2004), courts have granted plaintiffs' motion for expedited discovery to identify Doe defendants.

239 F.3d 1004, 1013-14 (9th Cir. 2001).  Widespread dissemination of Plaintiffs' copyrighted sound recordings over P2P networks devastates the music industry every day that it persists.

Each of the Defendants in this case is an active participant in a P2P network.  Each of the Defendants thus participates in an online swap meet, offering copyrighted sound recordings for download to each other and downloading copyrighted sound recordings from each other.  Each Defendant has chosen to make available from his or her computer hundreds or thousands of copyrighted sound recordings unlawfully (in exchange for the chance to copy millions of files illegally copied and disseminated by others).  *See* Declaration of Jonathan Whitehead in Support of Plaintiffs' Motion for Leave to Take Immediate Discovery ¶ 17 ("Whitehead Decl."); Second Declaration of Jonathan Whitehead ¶ 5 ("Second Whitehead Decl.") (attached as Exhibit B).  Finally, each Defendant is a subscriber of Comcast's internet service and uses Comcast's network to download and disseminate Plaintiffs' copyrighted works.

As explained in Plaintiffs' Motion for Leave to Take Immediate Discovery, Plaintiffs discovered each of the Defendants in this case disseminating copyrighted works without authorization on a P2P system.  Plaintiffs could identify the Internet Protocol ("IP") address from which each Defendant was unlawfully disseminating Plaintiffs' copyrighted works, and thus could determine that Comcast was each Defendant's ISP.  But Plaintiffs could not ascertain the name, address, or any other contact information for each of the Defendants.  Only Comcast, which maintains logs that match IP addresses with subscribers, possesses that information.

*Amici* assert that Plaintiffs have failed to present sufficiently "individualized evidence" to the Court in support of discovery.  *Amici* Br. at 10.  The merits of Plaintiffs' claims, however, are not germane at this stage of the proceedings.  Moreover, *amici*'s assertion is demonstrably false.  Plaintiffs have already provided significant evidence supporting their claims.  With respect to

3

each Defendant, Plaintiffs have specified the IP address, date, and time of the infringement; that information uniquely specifies a Comcast subscriber as the source of the infringement.  For each Defendant, Plaintiffs have provided a list of several copyrighted sound recordings that the Defendant disseminated without authorization.  *See* Exhibit A to the Complaint.  As explained in more detail in the first Whitehead Declaration, Plaintiffs downloaded a list of the files disseminated by each Defendant and downloaded several files being disseminated by each Defendant to confirm that Plaintiffs owned the copyrights of the sound recordings.  *See* Whitehead Decl. ¶¶ 16, 17.  Plaintiffs have provided sworn testimony that each of the named Defendants offered the copyrighted works listed in the Complaint and (based on evaluation of the names and file types) appeared to be offering hundreds of additional copyrighted sound recordings without authorization.  *See* Whitehead Decl. ¶ 17; Second Whitehead Decl. ¶ 5.  Finally, Plaintiffs have provided to the Court, as an example, detailed lists of the hundreds of files being distributed by three of the Defendants.  *See* Exhibit 1 to Whitehead Decl.  Plaintiffs have also provided testimony under oath that they possess virtually identical evidence for each of the other Defendants.  *See* Whitehead Decl. ¶ 17; Second Whitehead Decl. ¶ 5.

There is no dispute that a John Doe lawsuit is a proper means of bringing suit against unknown Internet infringers and that immediate discovery from the Defendants' ISP is the only way for Plaintiffs to obtain the information needed for the suit to proceed.  Unless and until Comcast discloses the identities of the infringers, Plaintiffs have no remedy for the past and ongoing infringement committed by the Defendants.

## ARGUMENT

### I.   Amici Have No Right To Participate In This Case Now.

The decision whether to allow *amici* to participate rests solely with the discretion of this Court. *See Newark Branch, NAACP v. Town of Harrison*, 940 F.2d 792, 808 (3d Cir. 1991) (the court has discretion "to determine the fact, extent, and manner of participation" by an *amicus*) (internal quotation marks and citation omitted). *Amici*'s motion and brief are simply premature.

Plaintiffs' motion for leave to take immediate discovery seeks only the right to serve discovery on Comcast to identify the Internet users who are unlawfully infringing Plaintiffs' copyrights. Plaintiffs have satisfied the "good cause" standard required to take such expedited discovery. *See* Memorandum in Support of Plaintiffs' Motion for Leave to Take Immediate Discovery at 5-8 (discussing the "good cause" standard).[3] Plaintiffs' motion expressly contemplates that Comcast will notify the Defendants so that each Defendant may be heard if he or she wishes, prior to the disclosure. If and when Defendants file any objections to subpoenas, the Court will be able to resolve them.

*Amici* suggest that Plaintiffs litigate a number of issues in the abstract – prior to issuance of a subpoena and notification to the Defendants, and without any Defendant's seeking to raise those issues. That suggestion is flawed for three reasons. First, *amici* cannot inject into this case any issues not raised by a party. *See McCleskey*, 499 U.S. at 523 n.10 ("It is well established . . . that this Court will not consider an argument advanced by *amicus* when that argument was not raised or passed on below and was not advanced in this Court by the party on whose behalf the argument is being raised.").

---

[3] *See Parker v. Doe #1*, No. Civ. A. 02-CV-7215, 2003 WL 21294962 (E.D. Pa. Jan. 21, 2003) (authorizing discovery from ISPs to identify Doe defendants).

Second, because no party has raised any of the issues mentioned by *amici*, the issues are not ripe for judicial review. It is axiomatic that legal issues should be resolved in the context of a concrete dispute between parties, not in the abstract. Any resolution of legal arguments raised by *amici* at this point would amount to nothing more than an advisory opinion based on arguments that a party to the litigation may never raise. In the absence of a concrete controversy raised by a party, this Court should not rule on the merits of the issues raised by *amici*. If and when a party raises any of the arguments now advanced by *amici*, the parties will have a full and fair opportunity to present their positions, and this Court will be able to resolve the issues then, in the context of a live, concrete dispute.

Third, if some Defendants do raise arguments similar to those in the brief *amici* seek to file, this Court will, in all likelihood, have to entertain those arguments twice – once when presented by *amici* in the abstract, and a second time when presented by individual Defendants in opposition to the requested discovery. Such duplicative litigation is a waste of judicial resources.

Notably, *amici*'s approach does not provide additional protection for Defendants beyond that described in Part II of this brief. Rather, *amici*'s approach maximizes the burden on copyright owners so that they will be less likely to enforce their rights. Imposing cumbersome, yet pointless burdens on Plaintiffs cannot be squared with the Copyright Act or the policies underlying it. Plaintiffs are the injured parties here; as a result of the conduct of Defendants, Plaintiffs suffer enormous losses, and that harm increases with every passing day. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983) (holding that a prima facie case of copyright infringement is sufficient to prove irreparable harm); *Educational Testing Servs. v. Katzman*, 793 F.2d 533, 543-44 (3d Cir. 1986) (holding that irreparable harm is

presumed with a prima facie showing of infringement).  Plaintiffs need to identify Defendants expeditiously so that Plaintiffs can vindicate their rights.

Until each Defendant has been notified and given the opportunity to determine what arguments (if any) he or she wishes to raise, the three arguments noted by *amici* – the First Amendment/Due Process, personal jurisdiction, and joinder – are not ripe for review. Accordingly, Plaintiffs discuss each argument only briefly below.[4]  Only the First Amendment argument, however, is in any way tied to the interest in anonymity that *amici* claim to advance. That interest is fully satisfied if Defendants have the opportunity to raise and litigate that issue prior to disclosure of their identities.  Personal jurisdiction and joinder, however, are traditional personal defenses that Defendants can raise at an appropriate point after they have been identified.  There is no need to litigate such issues prior to disclosure of their identities.

**First Amendment/Due Process.**  *Amici*'s suggestion that Defendants have a First Amendment interest when disseminating copyrighted works over a P2P network is both dubious and impossible to litigate absent participation by the Defendants.

Defendants have no right to engage in copyright infringement, anonymously or otherwise.  *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555-60 (1985); *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 574-78 (1977).  Plaintiffs have alleged a prima facie case of copyright infringement against Defendants and have gathered evidence specific to each Defendant.  If a Defendant desires to raise a First Amendment "anonymity" claim (or a due process challenge based on an interest in anonymity),[5] it is incumbent on him or

---

[4] In the event the Court grants *amici*'s motion, Plaintiffs intend to file a full response on the merits.

[5] Plaintiffs refer here to *amici*'s argument (which Plaintiffs vigorously dispute) that there is a First Amendment right to anonymity on the Internet.  To the extent that a Defendant seeks to

her to identify the constitutionally protected conduct in which he or she was engaged. Experience has taught Plaintiffs that few individuals disseminating copyrighted files on a P2P network even attempt to make this showing because they know they have been caught red-handed. In any case, the Court cannot address a First Amendment argument until a Defendant comes forward and claims a First Amendment interest. As discussed below in Part II, each Defendant will have the opportunity to raise such an argument (in the form of a motion to quash) prior to disclosure.

Amici preview the First Amendment arguments that Defendants might make. *See Amici Br.* at 4-10. In so doing, they demonstrate how weak those claims are. *Amici* attempt to create a "qualified privilege" in anonymity on the Internet, *see Amici* Br. at 4, but there is no such principle of law. Individuals have no expectation of privacy (under the First, Fourth, or Fifth Amendments) that prevents disclosure of the business records of third parties, such as telephone companies or ISPs. "[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979); *United States v. Miller*, 425 U.S. 435, 442-45 (1976). Just as telephone users forfeit the expectation that the telephone company will conceal records of their calls, *see Smith*, 442 U.S. at 742, ISP subscribers have no legitimate expectation that ISPs will conceal their identities in response to legal process. *See Guest v. Leis*, 255 F.3d 325, 335-36 (6th Cir. 2001) ("[C]omputer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person – the system operator."); *United States v. Hambrick*, 55 F. Supp. 2d 504, 507-09 (D. W. Va. 1999), *aff'd,* 225 F.3d 656 (4th Cir. 2000) (table).

---

litigate the merits of Plaintiffs' claims of copyright infringement, such as through a fair use defense, such litigation should occur only after the Defendant has been identified.

This is especially true here.  Each of the Defendants in this case chose to log onto a P2P network and to make available the contents of his or her computer to millions of other people. As one court explained in considering precisely the arguments made by *amici* here, given that an ISP subscriber "opens his computer to permit others, through peer-to-peer filesharing, to download materials from that computer, it is hard to understand just what privacy expectation he or she has after essentially opening the computer to the world." *In re Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244, 257, 267 (D.D.C. 2003), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003); *see also United States v. Kennedy*, 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000) (activation of file sharing mechanism shows no expectation of privacy).

Moreover, Defendants in this case cannot reasonably expect Comcast to preserve their anonymity given that Comcast informs them, in no uncertain terms, that it "will disclose personally identifiable information about you without your consent when required by law in order to comply with a valid legal process such as a subpoena, court order, or search warrant, for example."  Comcast High-Speed Internet Privacy Statement, available at http://www.comcast.net/privacy/.  Thus, although *amici* may wish to protect the Defendants' anonymity, the Defendants themselves have already forfeited it.[6]  *See Verizon*, 257 F. Supp. 2d at 267 (noting that ISPs terms of service clearly explain to users that the ISP will disclose identities in response to legal process).

---

[6] *Amici* counter by claiming that a pamphleteer does not give up his right to anonymity if he is recognized on the street by a passer-by.  *Amici*  Br. at 8-9.  But that claim has no relevance here. While the government may be limited in its ability to require pamphleteers to disclose their identities prior to and as a condition on speaking, the First Amendment imposes no limit on the authority of a subpoena or other legal process to command the passer-by to provide information in his or her possession – the identity of the pamphleteer.  It is the latter situation we have here. *See also Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182, 197-200 (1999) (contrasting invalid requirement that petitioners wear an identification badge while petitioning with valid requirement that petitioners sign an affidavit attesting to signatures obtained after petitioning).

*Amici* try to distinguish away this entire body of well-established case law as "irrelevant," by arguing that the cases consider privacy interests under the Fourth Amendment, not the First Amendment. *Amici* Br. at 8. That analysis is fundamentally flawed for several reasons. First, it presupposes that the Defendants' have a First Amendment interest in maintaining the privacy of their illegal copyright infringement. As discussed above, they do not. Second, even when First Amendment interests have been at stake, the Supreme Court has repeatedly rejected claims that such interests require a heightened level of scrutiny prior to issuance of a subpoena or other judicial process. *See University of Pa. v. EEOC*, 493 U.S. 182, 199-200 (1990); *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 192-93 (1946); *Reporters Comm. for Freedom of the Press v. American Tel. & Tel. Co.*, 593 F.2d 1030, 1050 n.67 (D.C. Cir. 1978) (rejecting requirement that journalists receive notification prior to issuance of subpoenas to phone companies for toll calling records).[7] *Amici* suggest that these cases are distinguishable because they involve different factual circumstances. *Amici* Br. at 8. But that makes no difference. These cases make plain that the kind of elevated scrutiny that *amici* seek is not required by the First Amendment; that principle applies with just as much force in the context of a subpoena to an ISP as it does in the context of a subpoena to a university.

*Amici* further discuss several cases in which courts have engaged in a balancing test before ordering the disclosure of an anonymous speaker's identity. *Amici* Br. at 5-7. *Amici* ask the court to "draw[] by analogy" from cases involving subpoenas to identify journalistic sources. *Amici* Br. at 5-6. Those cases, however, rest on far more significant First Amendment interests than *amici* can muster here. *Cf. Eldred v. Ashcroft*, 537 U.S. 186, 220 (2003) (the First

---

[7] The subpoena Plaintiffs propose to serve would seek only information to identify the Defendants, not information concerning the content of any communication they may have made over the Internet.

Amendment "bears less heavily when speakers assert the right to make other people's speeches"). Even if, however, the Court were to apply the same standard here, Plaintiffs would easily satisfy it. To obtain the identity of a journalistic source, a plaintiff need only show that the information is relevant, the information cannot be obtained by another means, and there is a compelling interest for providing the information. *See Carey v. Hume*, 492 F.2d 631, 632 (D.C. Cir. 1974); *Riley v. City of Chester*, 612 F.2d 708, 716 (3d Cir. 1979) (articulating similar test). Notably, *Carey* does not require any inquiry into the merits of Plaintiffs' claims. Rather, a plaintiff need only show that the information is sought in good faith, is unavailable from any other source, and is central to the plaintiff's claim. *See Carey*, 492 F.2d at 632.

*Amici*, citing other "balancing" cases, argue that the Court should look at the merits of Plaintiffs' claims to determine whether Plaintiffs have evidence to support their cause of action. *Amici* Br. at 6-7. Plaintiffs have, however, exceeded the standards in any of the cases cited by *amici*. Plaintiffs have alleged a prima facie case of copyright infringement. *See Feist Publ'ns Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (requiring allegations of ownership of a copyright and violation of one of the exclusive rights).[8] Indeed, by submitting the IP address assigned to each Defendant, the date and time at which the infringing activity was observed, and the titles of some of the illegally disseminated copyrighted sound recordings and the copyright owners of those sound recordings, Plaintiffs have provided specific evidence of infringement for all Defendants. *See* Exhibit A to the Complaint. Plaintiffs have also provided complete lists of

---

[8] *Amici*'s only complaint appears to be that Plaintiffs have provided the Court with a sample, rather than the entirety, of their evidence of infringement by each Defendant. Plaintiffs provided only a sample because there is no sound reason for requiring submission of literally boxes of documents to support good cause for a subpoena. Plaintiffs have provided sworn testimony that they have evidence with respect to *all* of the Defendants that mirrors the samples provided. *See* Whitehead Decl. ¶ 17; Second Whitehead Decl. ¶ 5. Moreover, as discussed in Part II of this brief, Plaintiffs can provide the detailed evidence with respect to any Defendant who claims a First Amendment interest and moves to quash.

the hundreds of files that three of the Defendants made available to the public, and sworn

testimony that Plaintiffs possess identical evidence for all other Defendants. *See* Whitehead

Decl. ¶ 17; Second Whitehead Decl. ¶ 5. That evidence demonstrates that all of the Defendants

in this case are active participants on a P2P network and serious copyright infringers. As Judge

Bates held in examining virtually identical facts in the *Verizon* case, such evidence more than

satisfies the standards in any of the cases cited by *amici*. *See Verizon*, 257 F. Supp. 2d at 263

n.22.[9]

      **Personal Jurisdiction.** This Court cannot render a determination on personal

jurisdiction without reference to actual defendants. Only a defendant has standing to raise

personal jurisdiction. Moreover, a personal jurisdiction defense can be (and regularly is) waived.

The parties cannot litigate any aspect of personal jurisdiction until the Defendants have been

identified, and all parties know who they are.

      Plaintiffs concede that many of the Defendants likely do not reside in this district, but that

does not mean that this Court has no jurisdiction over them. In this case, all of the Defendants

have significant contacts with the jurisdiction. Each has chosen for its Internet service an ISP

headquartered in the state of Pennsylvania. Moreover, Defendants have engaged in conduct that

subjects them to this Court's jurisdiction. By logging onto a P2P network, each Defendant

transformed his or her computer into an interactive Internet site, allowing others to complete

transactions (by downloading copyrighted works) over the Internet. *See Toys "R" Us, Inc. v.*

*Step Two, S.A.,* 318 F.3d 446 (3d Cir. 2003) (holding that personal jurisdiction exists where a

party intentionally interacts with a forum through an interactive website). As this Circuit has

---

[9] Indeed, Public Citizen conceded in the D.C. Circuit that evidence identical to that which
Plaintiffs have put forward meets the test *amici* propose in their brief. *See* Brief *Amicus Curiae*
of Public Citizen in *RIAA v. Verizon*, Nos. 03-7015 & 03-7053, at 14-15 (filed May 16, 2003).

made clear, the knowing and repeated transmission of electronic files to and from residents of this district establishes the sort of continuous and systematic contacts that justify an assertion of jurisdiction. *See Siegel v. Homestore, Inc.,* 255 F. Supp. 2d 451, 456 (E.D. Pa. 2003). In this case, each Defendant disseminated copyrighted works to anyone that wanted them (including residents of this jurisdiction) and downloaded copyrighted works from others who offered them (including residents of this jurisdiction).[10] *See Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 511-13 (D.C. Cir. 2002) (holding that an interactive Internet site allowing electronic transactions may establish "continuous" and "systematic" contacts sufficient for general personal jurisdiction). Unlike the cases cited by *amici, see Amici* Br. at 11, which involve "passive" websites or websites not designed to interact with residents of this district, this case involves Defendants who have transformed their computers into highly interactive sites for the express purpose of offering files for people, including residents of this district, to download. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (distinguishing passive websites which generally do not provide sufficient contacts with a forum to justify an assertion of jurisdiction from "interactive" websites which generally do support an assertion of jurisdiction); *Directory Dividends, Inc. v. SBC Communications, Inc.,* No. Civ. A. 01-CV-1974, 2003 WL 21961448, at *7 (E.D. Pa. July 2, 2003) ("The ability of Pennsylvania residents to purchase SBC products and services for use in Pennsylvania over the SBC website subjects SBC to the jurisdiction of this Court.").[11]

---

[10] A user downloading a music file on a P2P network such as KaZaA may download the same file from multiple computers at one time. *See* Second Whitehead Decl. ¶ 6. Thus, when a user in New Jersey downloads a file, he or she may be receiving parts of the same file, at the same time, from a computer in Pennsylvania, a computer in California, and a computer in Florida. *Id.*

[11] The fact that P2P infringers trade copyrighted works rather than sell them is irrelevant to whether the websites are fully interactive. *Amici* Br. at 12. The key issue is whether the sites are

In any case, the Court cannot complete an analysis of the Defendants' contacts with this forum until everyone, including the Plaintiffs, knows who the Defendants are. According to *amici*, Plaintiffs should use the admittedly imprecise methods discussed in their declaration[12] to guess the district in which each infringer resides and then file suit in that district. Plaintiffs would then have to come to this Court for subpoenas to Comcast, exactly as Plaintiffs have done here. This Court would then resolve any subpoena enforcement proceeding and/or motion to quash against Comcast and the as-yet anonymous defendants. Once individuals were identified, Plaintiffs would, a substantial percentage of the time, then have to re-file in yet a third federal court. As a matter of judicial efficiency and fairness to the Defendants, such a merry-go-round of courts makes little sense. Its primary effect would be to place additional burden on the Plaintiffs.

As discussed below, any Defendant who wants to raise personal jurisdiction issues will have the opportunity to do so.

---

interactive. The law of jurisdiction does not distinguish between illegal acts committed in exchange for money and illegal acts committed in exchange for bartered (and illegal) goods.

[12] *Amici*'s declaration is misleading in suggesting that copyright owners can determine the location of Internet infringers by means of various tools. *See* Schoen Decl. These tools do not provide the sort of accuracy of information that *amici* imply. First, *amici* refer to the use of "reverse DNS" to locate infringers. *Id.* ¶¶ 5-8. Yet, some of the DNS entries listed in the exhibits to the Schoen Declaration give absolutely no hint of the location of the IP address, and the others merely provide clues which could potentially lead to an incorrect location. Second Whitehead Decl. ¶ 8. Similarly, geographical codes can be misleading. For example, the letters "LV" could refer to the city Las Vegas, but they could also refer to any number of other cities, or, depending on the particular network, to another kind of identifier altogether. *Id.* ISPs have complete control over how they identify their routers. Many ISPs do not use geographic codes at all. Others do not keep the codes up to date as they change equipment, acquire new facilities, etc. *Id.* Second, even for an ISP that does use some form of geocoding to identify its routers, Plaintiffs' and their trade association's experience is that such codes accurately identify the region in which the infringer lives significantly less than 100% of the time. *Id.* Where such codes are inaccurate, they can be very inaccurate. *Id.* Third, as *amici*'s own Declaration shows, such tools reveal – *at most* – a major metropolitan area through which Internet traffic to the subscriber must pass. Such information may not accurately identify the judicial district or even the state where the infringer resides. Schoen Decl. ¶ 12.

**Joinder.**  Litigation of joinder is also premature.  In most cases, joinder is an issue raised by defendants, based on their assessment of whether litigation without co-defendants is preferable.  Indeed, a court considering a challenge to joinder must determine whether severance will prejudice any party or result in undue delay of the litigation.  *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (noting that joinder is a fact-intensive inquiry that requires case-by-case adjudication).  Until the Defendants are identified, the Court cannot make that assessment.  Moreover, because the sole remedy for misjoinder is severance, not dismissal, *see* Fed. R. Civ. P. 21, litigation of joinder at this point serves no purpose, other than to delay proceedings.  The result of a finding of misjoinder would be the division of this case into 203 lawsuits, followed by 203 subpoenas to Comcast, followed by litigation in the identical manner as here, except with far more paper.  Such a result would not provide additional fairness to Defendants, nor would it promote judicial economy.

In any event, *amici*'s arguments ultimately fail.  The Federal Rules direct "the broadest possible scope of action consistent with fairness to the parties [because] joinder of claims, parties and remedies is strongly encouraged."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).  The Court thus has wide discretion in determining whether joinder is appropriate and, if it is not, at what stage of the proceedings severance should be compelled.  *See, e.g., Miller v. Hygrade Food Prods. Corp.*, 202 F.R.D. 142, 144 (E.D. Pa. 2001).

*Amici*'s sole argument is that Plaintiffs do not meet the second of two prerequisites for joinder:  that the Complaint alleges a right to relief relating to or arising out of the same transaction or occurrence or series of transactions or occurrences.[13]  But the Supreme Court has

---

[13] *Amici*'s attempt to create a third requisite for joinder, *see Amici* Br. at 12-14 & n.5, conflicts with this Court's holdings.  *See, e.g., Becker v. Chicago Title Ins. Co.*, No. Civ. A. 03-2292,

instructed courts to interpret the terms "transaction" and "occurrence" broadly in accord with Rule 20's central purposes of promoting trial convenience, expediting the resolution of disputes, and preventing unnecessary lawsuits. *See id.* Indeed, a complaint satisfies the transaction or occurrence requirement when it alleges that the defendants engaged in a common scheme or pattern of behavior or when it alleges any "logical relationship" between the transactions and occurrences. *Id.*

That is precisely what Plaintiffs' Complaint alleges here. The crux of Plaintiffs' Complaint is that Defendants and others have participated in a common scheme or pattern of behavior, without which no individual Defendant would have been able to commit much (if any) of the infringing activity that underlies Plaintiffs' Complaint. Plaintiffs' Complaint alleges explicitly that each Defendant uses an online media distribution system (the P2P network) *to distribute to and to download from* other users of the same system – including the other Defendants – computer files that contain copyrighted sound recordings. Compl. ¶ 24. *See also* Whitehead Decl. ¶¶ 7, 16.[14] Thus, *amici* are wrong to assert that Defendants are connected only by their common use of the Internet. Defendants' concerted actions as users of the P2P network provide the "logical relationship" that clearly distinguishes this case from the hypotheticals and the misjoinder cases upon which *amici* rely.

Indeed, even if there was no such concerted action, severance would not be required. *Amici* fail to note that the courts have split on whether joinder was appropriate in satellite TV theft cases, even though the complaints in those cases have not alleged concerted action and

---

2004 WL 228672, at *2 (E.D. Pa. Feb. 4, 2004); *Miller*, 202 F.R.D. at 144; *King v. Pepsi Cola Metro. Bottling Co.*, 86 F.R.D. 4, 5 (E.D. Pa. 1979).

[14] Of the over 1000 Defendants Plaintiffs have sued in 9 parallel cases, approximately 99% are trading copyrighted works over the same P2P network, called the FastTrack network. *See* Second Whitehead Decl. ¶ 4.

interaction presented here. *See, e.g., DIRECTV, Inc. v. Hosey*, 289 F. Supp. 2d 1259, 1262 (D. Kan. 2003) (allowing joinder); *DIRECTV, Inc. v. Adkins*, No. 1:03CV00064, 2003 WL 23096482, at *1-*2 (W.D. Va. Dec. 29, 2003) (same); *In re Monon Tel. Co.*, 218 F.R.D. 614 (N.D. Ind. 2003) (same).

## II. Granting Plaintiffs' Motion Will Ensure An Opportunity For All Parties To Be Heard In An Orderly Fashion.

There is no need for the burdensome approach *amici* advocate. Instead, by granting Plaintiffs' Motion for Leave to Take Immediate Discovery, this Court can achieve orderly resolution of any arguments raised by the Defendants.

1. If this Court grants Plaintiffs' motion, Plaintiffs will issue a subpoena to Comcast with a return date 15 business days from the date of service. A return date of 15 business days – effectively 21 calendar days – is equal to the time that *amici* proposed. *See Amici* Br. at 17.

2. Plaintiffs believe Comcast intends to notify the Defendants once it receives a subpoena from Plaintiffs.[15] Plaintiffs have no objection with the Court directing Comcast to provide notice within 7 days of service of the subpoena. *Amici* concede that 15 business days from the date of service on Comcast is a reasonable time for a Defendant to file a motion to quash. Past experience indicates that some number of Defendants, once notified of the allegations, will contact Plaintiffs and seek a speedy resolution of Plaintiffs' claims.

3. For Defendants who do not move to quash (assuming Comcast raises no objections or its objections are resolved), Comcast can produce the information requested at the close of business on the return date of the subpoena. The filing of a motion to quash by one

---

[15] All of the Defendants in this case were previously the subject of DMCA subpoenas issued prior to the D.C. Circuit's decision in *RIAA v. Verizon Internet Services, Inc.*, 351 F.3d 1229 (D.C. Cir. 2003). Cox likely has already notified many of the Defendants of Plaintiffs' claims of infringement.

Defendant will not prevent the disclosure of the identities of those Defendants who do not move to quash.

4.     For Defendants who do move to quash prior to the return date, the Court can resolve their objections.  In a motion to quash, Defendants can raise the types of First Amendment and Due Process "anonymity" arguments suggested by *amici* in their papers (with Plaintiffs reserving their rights to raise any and all arguments in response).  In response to such a motion to quash, Plaintiffs can provide the same kind of detailed evidence that they have provided for the three infringers whose conduct has already been documented for the Court.  *See* Whitehead Decl. ¶ 17 and Exhibit 1; Second Whitehead Decl. ¶ 5.

5.     For Defendants whose identities are revealed to Plaintiffs, Plaintiffs believe that, because of the strength of Plaintiffs' evidence, substantial numbers of the Defendants may elect to settle matters without further litigation.

6.     For Defendants whose litigation proceeds without settlement, Plaintiffs can determine whether it is proper to continue in this jurisdiction, or whether to transfer to another forum.  Any Defendants who wish to raise personal jurisdiction or joinder issues can make such arguments at that time in the appropriate court.

Plaintiffs' need to vindicate their rights quickly will be balanced with Defendants' interest in having a full opportunity to raise arguments and defenses.  Moreover, the Court will avoid duplicative litigation over issues that can and should be resolved once in a concrete setting.

## CONCLUSION

For the foregoing reasons, *amici*'s motion should be denied, and Plaintiffs' Motion for

Leave to Take Immediate Discovery should be granted.

Respectfully submitted,

/Barbara L. Delaney BD1082/

Of Counsel:

DONALD B. VERRILLI, JR.
THOMAS J. PERRELLI
Jenner & Block LLP
601 Thirteenth Street, NW
Washington, DC 20005-3823
Telephone:  202-639-6000
Fax:  202-639-6066

Dated:  February 27, 2004

VINCENT V. CARISSIMI
(Pa. Atty. I.D. No. 42227)
BARBARA L. DELANEY
(Pa. Atty. I.D. No. 86160)
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone:  215-981-4000
Fax:  215-981-4750

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

SONY MUSIC ENTERTAINMENT INC.               :
et al.,
                                            :
                    Plaintiffs      .       :          **ORDER**

          - against -                       :          04 Civ. 473 (DC)

DOES 1 - 40,                                :

                    Defendants.             :

- - - - - - - - - - - - - - - - -x

CHIN, D.J.

          On January 26, 2004, this Court issued an order
granting plaintiffs' ex parte application for permission to
immediately serve discovery requests on a non-party witness,
Cablevision.

          Yesterday, the Court received a letter from the
Electronic Frontier Foundation ("EFF"), on behalf of EFF, the
American Civil Liberties Union, and Public Citizen, as amici
curiae, objecting to discovery by plaintiffs "into the identities
of persons who have communicated anonymously over the Internet."

          In their memorandum, plaintiffs represented that if
their ex parte application were granted, they would serve a
subpoena on Cablevision giving it fifteen business days in which
to respond.  Plaintiffs recognized that Cablevision would then be
able to notify its subscribers that this information was being
sought, and each defendant would then be able to object to the
subpoena or to move to quash prior to the return date of the

subpoena.  Of course, Cablevision also has the right to move itself to quash the subpoena.

IT IS HEREBY ORDERED AS FOLLOWS:

1.    The Court's January 26, 2004 order remains in effect;

2.    If and when Cablevision is served with a subpoena, within five business days thereof it shall give notice to the subscribers in question of the subpoena, and if Cablevision and/or any subscribers and/or any defendants wish to move to quash the subpoena, they shall do so before the return date of the subpoena;

3.    If and when it is served with a subpoena, Cablevision shall preserve the subpoenaed information in question pending resolution of any timely filed motion to quash;

4.    The issues raised by amici will be considered by the Court if and when any subscriber or defendant or Cablevision moves to quash and the parties and non-party witnesses have had an opportunity to be heard; and

5.    Counsel for plaintiffs shall provide a copy of this order to Cablevision when the subpoena is served, or, if the subpoena already has been served, then forthwith.  Plaintiffs' counsel shall also fax a copy to ECF.

SO ORDERED.

Dated:    New York, New York
          February 3, 2004

                                    DENNY CHIN
                                    United States District Judge

- 2 -

# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BMG MUSIC, *et al.*, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DOES 1-203, | : | |
| | : | |
| Defendants. | : | NO. 04-CV-650 |

## <u>SECOND DECLARATION OF JONATHAN WHITEHEAD</u>

I, Jonathan Whitehead, have personal knowledge of the facts stated below and, under penalty of perjury, hereby declare:

1.      I am Vice President and Counsel for Online Copyright Protection for the Recording Industry Association of America, Inc. ("RIAA"), where I have been employed for over 6 years.  My office is located at 1330 Connecticut Avenue, N.W., Washington, DC 20036.

2.      I previously submitted a declaration in support of Plaintiffs' motion for leave to take expedited discovery in this case.  I submit this declaration in support of Plaintiffs' Opposition to Motion of Public Citizen, et al., for Leave to File Memorandum as Amici Curiae Addressing Motion for Expedited Discovery.

3.      This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify to its truth and accuracy.

**The Defendants Use the Same FastTrack Network**

4.      RIAA members have filed nine so-called "John Doe" lawsuits in United States District Courts, including the instant case.  These nine lawsuits include a total of more than 1000 Doe Defendants, approximately 99% of whom are using the so-called "FastTrack" network to trade copyrighted works.  FastTrack is the largest current peer-to-peer network.

5.      Based on the steps described in paragraph 16 of the declaration I previously submitted in this case, RIAA was able to determine that each Defendant in this case has offered hundreds or thousands of copyrighted sound recordings unlawfully on P2P networks.  As described in paragraphs 16 and 17 of that declaration, RIAA has collected a list of the files that each Doe Defendant in this case has made available to the public.  Exhibit 1 to that declaration contains such lists for three of the Defendants.  The same detailed information of the lists of files that the other Defendants have made available to the public can be provided to this Court, if necessary.

**Geographic Issues Relating to P2P Users**

6.      As I explained in my previous declaration in this case, much of the unlawful distribution of copyrighted sound recordings over the Internet occurs via "peer-to-peer" ("P2P") file copying networks.  Examples of P2P networks include KaZaA, iMesh, Grokster and Gnutella.  When a user downloads a file on a P2P network, the user may download the same file from multiple computers at one time.  For example, when a user in New Jersey downloads a file using a P2P network, he or she may receive parts of the same file, at the same time, from computers in multiple geographical locations, e.g., from a computer in the Georgia, a computer in California, and a computer in Florida.

7.      I have reviewed the Declaration of Seth Schoen submitted in this case.  That declaration states that certain web-based tools enable people to access data to identify the geographic location of Internet users who are engaged in copyright infringement.  This data, however, is nowhere near as accurate as Mr. Schoen implies.

8.      Mr. Schoen's declaration overstates the precision of this data in several ways. First, that declaration refers to "reverse DNS" as a means of locating Internet users, but a number of the reverse DNS entries listed in Schoen Declaration exhibits appear to give absolutely no hint of the location of the IP address.  The others provide no more than potentially misleading clues about the location of Internet users.  Second, the process described in the Schoen Declaration requires that an ISP use geographic information, such as geographic abbreviations or airport codes, to identify routers that transmit messages to users.  Geographical codes can be misleading. For example, the letters "LV" could refer to the city Las Vegas, but they could also refer to any number of other cities, or, depending on the particular network, to another kind of identifier altogether.  ISPs have complete control over how to name their routers.  Many ISPs do not use geographic codes at all.  For these ISPs, a copyright owner can glean no information about the location of a subscriber disseminating copyrighted works from a particular IP address based on the data accessed by the web-based tools described in the Schoen Declaration.  Third, even for ISPs that do use some form of geographical codes, my experience at RIAA is that the codes fall far short of being 100% accurate in even identifying the region in which the infringer is located. When the codes are inaccurate, they are often extremely inaccurate.  Fourth, even if the process described in the Schoen Declaration leads to a particular metropolitan area, this information does not necessarily identify the state or judicial district in which the infringer resides.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Executed on February 26, 2004, in Washington, DC.

Jonathan Whitehead

## CERTIFICATE OF SERVICE

The undersigned, Barbara L. Delaney, hereby certifies that on February 27, 2004, she caused a true and correct copy of the foregoing Plaintiffs' Opposition to Motion of Public Citizen, et al., for Leave to File Memorandum as Amici Curiae Addressing Motion for Expedited Discovery, and accompanying papers, to be served upon each of the counsel who have appeared in this matter, by depositing same in the United States Mail, First-Class, postage-prepaid, addressed to:

> Malia N. Brink, Esquire
> ACLU of Pennsylvania
> 125 So. 9th Street, Suite 701
> Philadelphia, PA 19107
>
> and
>
> Kenneth A. Murphy, Esquire
> Miller Alfano & Raspanti, P.C.
> 1818 Market Street, Suite 3402
> Philadelphia, PA 19103

> _____/Barbara L. Delaney BD1082/_____
> BARBARA L. DELANEY